UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN ANTHONY WILLIAMS, SR., | No. 2:23-cv-2182-SCR |
| Plaintiff, | |
| v. | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow, the court will DENY Plaintiff's motion for summary judgment and GRANT Defendant's cross-motion.

**I.  PROCEDURAL BACKGROUND**

Plaintiff applied for DIB on April 9, 2021, alleging disability beginning October 15, 2020. Administrative Record ("AR") 10.[2]  The application was disapproved initially on May 20, 2021 and on reconsideration on December 15, 2021.  AR 10.  On July 29, 2022, ALJ Daniel Myers

---

[1] DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and who suffer from a mental or physical disability. *See* 42 U.S.C. § 423(a)(1); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986).
[2] Two copies of the AR are electronically filed, collectively as ECF No. 10 (AR 1 to AR 1563).

1

presided over a telephonic hearing on Plaintiff's challenge to the disapprovals. AR 26-46 (transcript). Plaintiff appeared with Harvey Sackett as counsel and testified at the hearing. AR 10, 26-27, 30. Vocational Expert ("VE") Thomas Linvill also testified. AR 10, 26-27, 41.

On August 31, 2022, the ALJ found Plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d). AR 10-19 (decision), 20-25 (exhibit list). On August 1, 2023, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. AR 1-3 (decision and additional exhibit list).

Plaintiff filed this action on October 2, 2023. ECF No. 1. The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 6, 8-9. Cross-motions for summary judgment, based on the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 13 (Plaintiff's summary judgment motion), 15 (Commissioner's summary judgment motion). Plaintiff submitted a reply brief on August 6, 2024. ECF No. 16.

## II. FACTUAL BACKGROUND

Plaintiff was born on October 15, 1970, and accordingly was, at age 50, an individual closely approaching advanced age under the regulations as of the alleged disability onset date. AR 18; *see* 20 C.F.R §§ 404.1563(d). Plaintiff finished two years of college in 2004, including obtaining heating and air conditioning certificate. AR 232, 234. He worked as a heating and air conditioning technician from 1999 through January 2019, when he purportedly stopped due to his conditions. AR 233-34.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

DIB is available for every eligible individual who is "disabled." 42 U.S.C. § 423(a)(1)(E). Aside from blind individuals over the age of 55, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since October 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: thoracic disc disease, coronary artery disease, degenerative joint disease of the right wrist and obesity (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ found] that the claimant has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except as follows: the claimant can have no more than occasional stooping, kneeling, crouching, crawling and climbing stairs. The claimant can have frequent, not constant, handling and fingering with the right upper extremity. He should avoid exposure to work hazards, such as unprotected heights and dangerous, moving machinery.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on October 15, 1970 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2020, through the date of this decision (20 CFR 404.1520(g)).

AR 12-19.

## VI. ANALYSIS

### A. The ALJ Committed a Harmless Error in Rejecting Plaintiff's Pain Testimony

#### 1. <u>The ALJ Erred in His Analysis</u>

During the hearing, Plaintiff testified that the pain in his left ankle made it too dangerous to climb up and down ladders. AR 31. Meanwhile, his hernia and back pain kept him from using ropes to lift 100-pound and 200-pound motors like he used to. AR 31. Because doctors have also revoked his drivers' license due to his heart issues, Plaintiff asserted he can no longer viably work in HVAC installation, the only career he has ever had. AR 31-32.

As to daily routines, Plaintiff asserted that when going to the grocery store with his family, he can only walk in the store for 20-25 minutes while holding a cart before going to go sit in the car. AR 33-34. Although Plaintiff used to mop floors while with the military, he now needs 1-1.5 hours to mop his house with a half-hour break for this back. AR 34-35. He takes additional breaks because his foot also slips in the process, disturbing his balance. AR 35. Plaintiff sits down at a table to do laundry and still gets back pain for the rest of the day. AR 36. Plaintiff fully reclines the seat when a passenger on long car trips but still needs to get out and stretch his back and foot. AR 36-37. A four-hour drive to the Bay Area becomes a six-hour drive, based on Plaintiff needing at least three breaks to stretch. AR 36-37.

Plaintiff testified that although he had a heart condition and a nitroglycerin prescription for chest pain, his back and knee kept him from completing a treadmill stress test as part of his assessment. AR 38-39. Plaintiff asserts he cannot remain standing for a full workday, and that walking down inclines would cause his ankles to swell. AR 40. Even walking from one end of a large job site to another for a full day is not viable for him. AR 40-41. When asked about evidence that he walked a 1.5-mile loop in a park in May 2021, Plaintiff asserted he took breaks during that walk. AR 44 (citing AR 1336). Plaintiff also admitted he was an avid hunter but asserted he now only practices shooting clay pigeons twice a year, and that he has not gone on actual hunting trips since his accident. AR 44-45.

The ALJ found that Plaintiff's impairments could result in the alleged symptoms, but that the medical record did not support claims as to the intensity and persistence of those symptoms.

AR 16.  As of October 2020, the alleged month of disability onset, "[a]n examination showed only mild swelling at the right wrist with range of motion 75% of normal[.]"  AR 16.  The damage was treated with medication and injections.  AR 16.  Physicians reported right hand and back pain in November 2020, but noted that physical therapy had helped.  AR 16.  As of January 2021, injections has purportedly helped, and the swelling and range of motion were the same as October 2020.  AR 16.

In December 2020, Plaintiff was treated for chest pain and "went into ventricular fibrillation, requiring electric shock and medication, followed by left circumflex and obtuse marginal artery stenting."  AR 16.  He was diagnosed with a myocardial infarction plus morbid obesity.  AR 16.  Physicians reported that his condition improved, such that he was capable of walking 1.5 miles in a park as of May 2021.  AR 16-17.  January and April 2022 visits revealed normal findings aside from obesity.  AR 17.

The ALJ summarized this history as "improvement or stability with conservative care," aside from the December 2020 heart-related procedures.  AR 17.  This was inconsistent with Plaintiff's allegations of disabling pain and weakness.  AR 17.  The ALJ added that Plaintiff's daily activities like "caring for minor children, performing some personal care tasks, preparing some meals, completing household chores, assisting with laundry and shopping in stores" were inconsistent with the alleged degree of disability.  AR 17.  The RFC also included postural and environmental limitations to reflect safety concerns arising from Plaintiff's back pain, and it limited Plaintiff to "frequent," but not constant, "handling and fingering" to account for impairment in the right wrist.  AR 17.

Evaluating a claimant's subjective testimony is a two-step process.  First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged…. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or

fatigue itself is not required. *Id.* Second, if the claimant succeeds in providing objective evidence of the impairment and "there is no evidence of malingering," the ALJ cannot reject the claimant's testimony about the severity of such symptoms unless there is "specific, clear and convincing reasons for doing so." *Id.* at 1014-15 (internal citations and quotations omitted).

While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).[3]

Citing *Brown-Hunter v. Colvin*, Plaintiff argues that the ALJ failed to identify which particular medical findings are inconsistent with which functional deficits. ECF No. 13-1 (citing 806 F.3d 487 (9th Cir. 2015)). The Ninth Circuit did not, however, require precise one-to-one matching of discredited testimony with medical evidence in that case. It only required that the ALJ "'identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998)). It contrasted this against "a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are [not] credible.'" *Brown-Hunter*, 806 F.3d at 493 (quoting Social Security Ruling 96–7P).

Based on this rule, the Ninth Circuit reversed a decision where the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination." *Brown-Hunter*, 806 F.3d at 494. The decision at issue, however, does more. It does summarize medical evidence, but it also emphasizes how this medical evidence undermines Plaintiff's allegations that the pain from his condition is disabling. AR 16-17. It also imposes some limitations on Plaintiff's RFC based on medical evidence that the ALJ did find consistent

---

[3] Defendant argues that the specific, clear and convincing standard conflicts with the "substantial evidence" standard in 42 U.S.C. § 405(g). ECF No. 15 at 3, n.3; 759 F.3d at 1015. Regardless of the merits of that argument, this Court is not free to depart from binding Ninth Circuit precedent.

8

with Plaintiff's testimony as to back problems.  AR 17.  This explanation is not inadequate.

Plaintiff then argues that in categorizing his treatment as "conservative," the ALJ ignored surgeries on, *inter alia*, his left ankle and his right toe.  ECF No. 13-1 at 19 (citing AR 815, 1554).  As the ALJ noted then, and Defendant notes now, both operations were in 2019 and therefore predate the alleged disability onset date of October 15, 2020.  ECF No. 15 at 6; AR 10, 13, 815, 1554.  Plaintiff points to no evidence that these surgeries worsened his pain, as opposed to alleviating that pain.  To the extent that treatment cures or alleviates the alleged symptoms, it undermines rather than supports Plaintiff's allegations of pain as of the disability onset date.  *See, e.g., Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling).  The relevant question is to what extent Plaintiff has felt pain since.

Plaintiff then challenges the ALJ's reliance on Plaintiff's daily activities, arguing that a claimant need not "vegetate in a dark room" to prevail on a DIB claim.  ECF No. 13-1 at 19 (citing *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir.1987) (quoting *Smith v. Califano,* 637 F.2d 968, 971 (3d Cir.1981))).  Plaintiff also objects to specific details of the ALJ's summary.  ECF No. 13-1 at 20.  The ALJ asserted, for example, that Plaintiff "has been capable of caring for minor children," but Plaintiff testified his children are 17 and 19 years old.  ECF No. 13-1 at 20 (citing AR 32); AR 17.  The ALJ cited evidence that Plaintiff has walked 1.5 miles in a park, but Plaintiff explained the walk was not continuous.  ECF No. 13-1 at 20 (citing AR 44).  The ALJ asserted Plaintiff hunts, but Plaintiff testified he has only practiced shooting once or twice a year since his accident.  ECF No. 13-1 at 20 (citing AR 45).

Plaintiff is right that an ALJ should not penalize claimants "for attempting to lead normal lives in the face of their limitations."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  An ALJ can, however, cite a claimant's daily routine to the extent that it is inconsistent with the degree of disability that plaintiff alleges.  *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (even where claimant's everyday activities reflect difficulty in functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment).

The ALJ's findings as to such activities still give cause for concern. Whether Plaintiff needed breaks when walking 1.5 miles affects whether he can stand or walk long enough to perform light work rather than sedentary work. *See* AR 44. That Plaintiff has transitioned from taking actual hunting trips to just practicing his aim twice a year also suggests that long walks are no longer viable for him. AR 44-45. If the ALJ was going to rely on daily activities in his assessment, he needed to explain why these parts of Plaintiff's testimony were either discredited or irrelevant.

The discrepancy as to Plaintiff's children is partly of Plaintiff's own making, but no less problematic. The ALJ cited a 2021 Adult Function Report Form where Plaintiff admitted he was "a mentor and parent to *3 minor children*." AR 17, 312 (emphasis added). Plaintiff has not reconciled this with his testimony alleging that his children are 17 and 19 years old. *See* AR 32. Even if the eldest was 17 when Plaintiff completed the Adult Function Report Form, Plaintiff never identifies the third minor child. Nevertheless, the ALJ's failure to identify the discrepancy, or acknowledge Plaintiff's testimony as to his children in any capacity, compromises the validity of the analysis.

### 2. The Error was Harmless

The Court must now evaluate whether the ALJ's error is harmless, meaning it was "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r of Soc. Sec*, 454 F.3d 1050, 1055 (9th Cir. 2006). Where, as in this case, the ALJ provides specific reasons supporting a conclusion, "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004)). In other words, if an ALJ provides multiple "record-supported reasons for discrediting the claimant's testimony," an error in any one reason is harmless on its own. *Stout,* 454 F.3d at 1055 (citing *Batson,* 359 F.3d at 1197).

The "relevant inquiry … is not whether the ALJ would have made a different decision absent any error … it is whether the ALJ's decision remains legally valid, despite such error."

10

*Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008). Multiple reasons for a particular conclusion can render an error in one harmless because the others provide "a basis for the court to review the ALJ's decision[.]" *Id.* at 1163; *see also Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (refusing to find an error harmless when "the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence[.]'") (internal citations omitted).

As discussed above, the ALJ erred in the assessment of Plaintiff's daily activities. The ALJ assessment of Plaintiff's treatment history and history of care, however, was without error. As the ALJ noted, Plaintiff's treatment records for his back and hand injuries, which the ALJ reviewed in some detail, "reflected conservative case" which "is inconsistent with allegations of disabling pain and weakness." AR 17. This analysis alone constitutes a "clear and convincing" reason to reject Plaintiff's subjective testimony. *See Garrison*, 759 F.3d at 1014-15. The error was therefore harmless and does not merit reversal or remand.

**B. The Rejection of Lay Witness Testimony Also Constitutes Harmless Error**

On May 7, 2021, Plaintiff's wife Mrs. Tamara Williams submitted a third-party function report. AR 336, 343. She asserted that Plaintiff takes care of three children and feeds two dogs, but that their son helps Plaintiff with any chores involving the animals. AR 337. When describing what Plaintiff does, she said he goes to physical therapy and doctor appointments but could still take care of his everyday personal hygiene "sometimes with help." AR 337. She also asserted his conditions affected his ability to sleep, but did not explain beyond stating, "He has PTSD." AR 337. In contrast, Mrs. Williams asserts that Plaintiff could work and help with "everyday things for the household" before he became ill. AR 337.

Mrs. Williams asserted that she prepares Plaintiff's medication dosages weekly and reminds him to take them. AR 338. She asserted they prepare meals together, which takes Plaintiff all day. AR 338. Plaintiff has also abandoned all outdoor chores and just helps with laundry, again purportedly taking all day and sometimes needing reminders due to the resulting pain. AR 338.

Mrs. Williams also confirmed Plaintiff goes outside by car every day but does not drive

himself because he does not have his license and is afraid to go out alone. AR 339. She asserted he shops for 30-60 minutes per week, and that shopping for groceries is the only time that Plaintiff handles money instead of her. AR 339-40. Plaintiff is capable of counting change but not paying bills, handling a savings account, or using a checkbook. AR 339. Aside from his grocery trips, Plaintiff only goes out for occasional family gatherings and has abandoned hunting and fishing as hobbies. AR 340.

Mrs. Williams asserted that Plaintiff's conditions prevented him from lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentration, using hands, and getting along with others. AR 341. Plaintiff can only walk half a mile without needing a five- to ten-minute break. AR 340. He also sometimes struggles with written but not oral instructions, was well as getting along with certain people. AR 341-342. She also asserted that Plaintiff generally had not been the same since his heart attack on Christmas Eve of 2020. AR 342.

"Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). To discount lay witness testimony, an ALJ must give "reasons that are germane to each witness." *Id.* at 919. In *Valentine v. Astrue*, the Ninth Circuit held that where an ALJ gave valid reasons for rejecting claimant's complaints, "because the wife's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony." 574 F.3d 685, 694 (9th Cir. 2009). *See also Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) ("We have not, however, required the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.").

The ALJ summarized Mrs. Williams' report as "generally corroborat[ing]" Plaintiff's pain testimony and asserting "severe physical and mental limitations[.]" AR 16. Instead of discussing her assertions on their own, the ALJ decision uses the phrase "the claimant's statements (and third party statements)" to discount her report for the same reasons it discounts Plaintiff's

testimony. AR 16-17. Plaintiff does not object to this practice but argues that the ALJ therefore erred in discounting Mrs. William's assertions for the same reasons as he did when evaluating Plaintiff's testimony. ECF No. 13-1 at 22.

As discussed above, the ALJ's only error in discounting Plaintiff's subjective testimony lay in misunderstanding Plaintiff's daily activities. *See supra* VI.A.1; AR 17. Because the ALJ's analysis of the medical evidence undermining Plaintiff's testimony was adequate to discount Plaintiff's testimony, however, this error was harmless. *See supra* VI.A.2. The same logic applies to the ALJ's decision to discount Mrs. Williams' testimony in the process.

### C. The ALJ Did Not Err in Finding State Medical Consultants' Opinions Persuasive

In a December 2021 Disability Determination Explanation ("DDE"), Dr. Steven Kao summarized Plaintiff's symptoms as pain, weakness, and social interaction limitations. AR 102, 109. Dr. Kao asserted that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, stand or walk for six hours in an eight-hour workday, sit for the same amount of time per workday, and occasionally climb ramps and ladders, stoop, kneel, crouch, and crawl. AR 103-04. Dr. Kao asserted that Plaintiff did have limitations in handling and fingering things with his right hand. AR 104. He also advised that Plaintiff should avoid "even moderate exposure" to hazards like machinery and heights. AR 106. Based on these limitations, Dr. Kao concluded that Plaintiff could not perform past relevant work but could perform "light" jobs. AR 107-08.

In a May 2021 DDE, Dr. Q. Nguyen's summary of Plaintiff's symptoms, lifting and carrying limitations, postural limitations, and capacity for standing, walking, or sitting was identical to Dr. Kao's summary. AR 84-86, 91. Dr. Nguyen also advised that Plaintiff should avoid "even moderate exposure" to hazards like machinery and heights. AR 87. Based on these limitations, Dr. Nguyen concluded that although Plaintiff could not perform past relevant work, he could perform "light" jobs like swatch clerk, collator operator, and photocopy-mach operator. AR 89-90. Dr. Nguyen, however, did not identify any manipulative limitations. AR 86.

The ALJ addressed both opinions in a single paragraph, finding them both persuasive. AR 17. He found them "consistent with evidence of normal heart findings, normal musculoskeletal findings and normal neurological findings, independent gait and normal

coordination[.]" AR 17-18 (citing AR 1523, 1532). The ALJ credited Dr. Kao's findings slightly more because his proposed limitations on manipulation with Plaintiff's right hand reflected his wrist's impairment. AR 18.

For any DIB application filed after 2017, no medical opinion or administrative medical finding is given specific evidentiary weight, such as controlling weight. 20 C.F.R. § 404.1520c(a). Each such opinion is instead evaluated based on supportability through objective medical evidence, consistency with other medical and nonmedical sources, relationship with the claimant, specialization in the relevant area, and other factors that seem to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(c). Of these, supportability and consistency are most important. 20 C.F.R. § 404.1520c(a). "Relationship with the claimant" includes the length and purpose thereof, the frequency of the examinations, the "kinds and extent of examinations and testing" by this expert, and whether the expert personally examined the claimant as opposed to reviewing evidence in his folder. 20 C.F.R. § 404.1520c(c)(3).

An ALJ decision must articulate how persuasive it found each opinion, but it need not articulate how it considered every factor for every medical opinion. 20 C.F.R. § 404.1520c(b)(1). If "a medical source provides multiple medical opinion(s)[,]" the ALJ need only specify how it "considered the medical opinions…from that medical source together in a single analysis using the factors" listed above. Id. Because supportability and consistency are the most important factors, the ALJ must explain how it considered them, but has discretion to discuss the other three as appropriate. 20 C.F.R. § 404.1520c(b)(2). When multiple opinions on one issue are equally well-supported and consistent with the rest of the record, but not entirely consistent with each other, the decision must articulate whichever combination of the remaining factors the ALJ considered in deciding which opinion was the more persuasive. 20 C.F.R. § 404.1520c(b)(3).

Plaintiff challenges the finding that these opinions were persuasive, particularly as to their conclusion that he can stand or walk for six hours in an eight-hour workday. ECF No. 13-1 at 23. He argues that multiple instances of abnormal musculoskeletal findings during examinations, including on the pages the ALJ cites, undermine this holding. Id. (citing AR 817, 1036, 1523, 1532).

1    Defendant responds that Dr. Nguyen considered some of these examination results in his
2    DDE.  ECF No. 15 at 9 (citing AR 80-81).  Defendant further argues that relevant regulations
3    explicitly decline to "use findings on imaging … as a substitute for findings on physical
4    examination about [a claimant's] ability to function…[or to] infer severity or functional
5    limitations based solely on such tests."  ECF No. 15 at 9 (quoting 20 C.F.R. pt. 404, subpt. P.
6    app'x 1 § 1.00(C)(3)(c) (2021)).

7    Defendant also argues that even if parts of the medical evidence would support a contrary
8    holding, the ALJ's conclusion receives deference so long as the evidence is at least susceptible to
9    that interpretation.  ECF No. 15 at 8-9 (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.
10   2005)).  Plaintiff maintains in reply that the ALJ's holding is not even rational enough to invoke
11   this deference.  ECF No. 16 at 7.

12   Defendant is correct that ALJs will not infer a claimant's functional limitations "solely"
13   based on the results of imaging or other diagnostic tests.  20 C.F.R. pt. 404, subpt. P. app'x 1 §
14   1.00(C)(3)(c).  Appendix 1, however, does acknowledge that these tests "can provide evidence of
15   physical abnormalities" that could lead to functional limitations.  *Id.*  The question becomes what
16   findings or opinions tie these imaging results to possible limitations beyond those acknowledged
17   in the decision.

18   An MRI in June 2020 did highlight "multilevel disc desiccation[,]" or dehydration; "disc
19   space narrowing" across the spine; and wedging of discs in the midthoracic region.  AR 817.  It
20   also, however, found no evidence of listhesis, fractures, abnormal neurological signals along the
21   spinal cord, or edema in the marrow.  AR 817.  Plaintiff fails to articulate why these observations
22   are not "normal" insofar as they could influence any functional limits he has.  *See* AR 17.

23   An MRI of Plaintiff's right wrist in October 2020 identified some "effusion[,]" or fluid
24   surrounding the joints, but no dislocation.  AR 1036.  Although the administrating physician did
25   recommend "clinical correlation[,]" Plaintiff does not cite any instance of such correlation to
26   functional limitations or pain.  AR 1036.  In any case, Dr. Kao did propose limitations on
27   handling and fingering with this hand, and the ALJ found his DDE more persuasive than Dr.
28   Nguyen's DDE as a result.  AR 18, 104.  The RFC therefore limits Plaintiff to "frequent, not

constant, handling and fingering with" his right hand. AR 15, 18. Plaintiff fails to show how these imaging results alone either merit more severe limitations for this hand or affect how long he can stand, the primary assertion in his motion. See ECF No. 13-1 at 23.

As to the evidence the ALJ cites, Dr. Jacie Jones did write on April 18, 2022 that Plaintiff experienced "burning pain from right low back down to right toes" and an increase in "knee pain…with bending/laying down[.]" AR 1523. This "Review of Systems" section of the report, however, evidently reflects Plaintiff's own allegations as to pain or other systems, including that he "denies" issues in any other system. AR 1523. A reiteration of Plaintiff's self-proclaimed symptoms in the medical record does not convert them into objective medical evidence. The opposite is true; when a medical opinion is primarily based on a plaintiff's self-reports to the medical provider, the ALJ can find this opinion unpersuasive. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008)).

Plaintiff's self-reported symptoms sharply contrast with Dr. Jones' own observations during the physical examination. Plaintiff was able to walk with his leg straight, without any assistive device. AR 1523. Although he experienced some pain when bending, Plaintiff does not explain why this would limit how long he can stand or walk. AR 1523. Nor does a finding of "no acute distress" during an examination earlier that year merit any physical limitations. AR 1532.

Plaintiff has failed to identify any medical evidence that suggests the ALJ should have found Dr. Nguyen and Dr. Kao's DDEs unpersuasive.

**D. The ALJ Did Not Misrepresent Plaintiff's Impairments to the VE.**

The VE testified that Plaintiff's past relevant work as an HVAC technician qualified as "medium work." AR 41. The ALJ asked the VE to assume a hypothetical individual was right-hand dominant and limited to "light" exertion with "no more than occasional stooping, kneeling, crouching, crawling, and climbing stairs" and "[f]requent, not constant, handling and fingering with the right upper extremity." AR 42. The ALJ further asked the VE to assume the individual must avoid hazards like "unprotected heights and dangerous moving machinery." AR 42. The VE testified that such an individual could not perform Plaintiff's past relevant work but could

perform "light, unskilled work" like routing clerk, cashier, and "marker or pricer." AR 42-43. The ALJ cited this testimony when finding that Plaintiff can still make "a successful adjustment to other work that exists in significant numbers in the national economy." AR 19.

During cross-examination, counsel for Plaintiff asked the VE to assume the aforementioned hypothetical individual was also unproductive or off-task for over 15% of the workday due to pain. AR 43. The VE replied that such an individual could not perform any competitive work, including the occupations previously identified, because the minimum productivity standard for any job is 85%. AR 43. The ALJ's decision does not reference this testimony. *See generally* AR 18-19.

In determining whether a claimant can do past relevant work based on the current RFC, the Commissioner may both ask the claimant about his past work and use a vocational expert to provide necessary evidence. 20 C.F.R. §404.1560(b)(2). The vocational expert "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." *Id.*

If a vocational expert's hypothetical does not reflect all the claimant's limitations, however, then the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). Conversely, "[t]he ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel." *Whyte v. Berryhill*, Case No. CV 16–06158–RAO, 2018 WL 1472497 at *15 (C.D. Cal. Mar. 23, 2018) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989)). When the claimant presents the expert with a hypothetical that is more restrictive than the ALJ's hypothetical, the ALJ may "accept or reject those restrictions" based on the ALJ's evaluation of the evidence. *Whyte*, 2018 WL 1472497 at *15 (quoting *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986)). When, for example, the ALJ's RFC determination omits Plaintiff's limitations and is supported by substantial evidence, the ALJ and vocational expert may rely on a hypothetical that reflects only the restrictions in the RFC determination.

*Whyte*, 2018 WL 1472497 at *15.

Plaintiff argues that the ALJ's application of the VE testimony ignores the limitations and allegations from both his own testimony and that of his wife. ECF Nos. 13-1 at 24, 16 at 8. Defendant correctly notes that this effectively repeats the argument that the ALJ erred in finding that this testimony was unpersuasive. ECF No. 15 at 9. As discussed above, any error the ALJ may have committed during such analysis is harmless. *See supra* VI.A-B. The RFC determination therefore did not include limitations based on debilitating pain. AR 15. The ALJ was only required to present the VE with a hypothetical individual matching the RFC determination, which he did. *Compare* AR 15 *with* AR 42.

The ALJ did not err in disregarding the VE's testimony as to whether a hypothetical individual with Plaintiff's RFC determination could still work if he was also in debilitating pain for at least 15% of the workday.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13), is DENIED;
2. Defendant's cross-motion for summary judgment (ECF No. 15) is GRANTED;
3. The Commissioner's final decision in this matter is AFFIRMED; and
4. The Clerk of the Court shall enter judgment and close this case.

DATED: June 5, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE